IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

Gregory McDowell,                          )        Case No.: 4:23-cv-00220-JD-KDW
                                           )
                    Plaintiff,             )
                                           )
        vs.                                )
                                           )        **ORDER AND OPINION**
South Carolina Department of Public Safety )
and Brendan Delaney,                       )
                                           )
                    Defendants.            )
_____  )

This matter is before the Court with the Report and Recommendation ("Report") of United

States Magistrate Judge Kaymani D. West, made in accordance with 28 U.S.C. § 636(b)(1) and

Local Civil Rule 73.02(B)(2) of the District of South Carolina.[1]  (DE 66.)  Plaintiff Gregory

McDowell ("Plaintiff" or "McDowell") sued the South Carolina Department of Public Safety

("Defendant" or "SCDPS") and Brendan Delaney ("Delaney") for claims surrounding a traffic

stop that occurred on March 11, 2021.[2]  (DE 1-1.)  McDowell's complaint asserted these causes

of action: (1) negligence/gross negligence, (2) malicious prosecution, (3) false arrest/false

imprisonment, (4) abuse of process, (5) negligent infliction of emotional distress – outrage, (6)

---

[1]     The recommendation has no presumptive weight, and the responsibility for making a final
determination remains with the United States District Court. *See Mathews v. Weber*, 423 U.S. 261, 270-71
(1976).  The court is charged with making a de novo determination of those portions of the Report and
Recommendation to which specific objection is made.  The court may accept, reject, or modify, in whole
or in part, the recommendation made by the magistrate judge or recommit the matter with instructions.  28
U.S.C. § 636(b)(1).

[2]     On March 11, 2021, Delaney was an agent or employee of SCDPS.  (DE 1-1 at 2; *see also* DE 44,
p. 2.)

assault and battery, (7) a § 1983 claim for illegal search and seizure and due process violations

against Delaney, and (8) a § 1983 claim for cruel and unusual punishment against Delaney.[3]

On February 23, 2024, Delaney moved for Summary Judgment under Rule 56, Fed. R. Civ.

P. (DE 44.) McDowell responded on March 8, 2024 (DE 52), and Delaney replied (DE 60).

Delaney's former employer, SCDPS, also moved for Summary Judgment on February 23, 2024.

(DE 46.) McDowell responded (DE 53), and SCDPS replied (DE 61). The Report was issued on

July 30, 2024, recommending that:

> Delaney's Motion for Summary Judgment be granted as to Plaintiff's negligence,
> abuse of process and negligent infliction of emotional distress claims, as well as
> any claim brought pursuant to the Eighth Amendment, but denied as to Plaintiff's
> Fourth Amendment claim brought pursuant to § 1983, as well as Plaintiff's state
> law claims for false arrest/false imprisonment, malicious prosecution, and assault
> and battery. ECF No. 44. The undersigned recommends that Defendant SCDPS's
> Motion for Summary Judgment be granted as to Plaintiff's malicious prosecution,
> abuse of process claim, and any simple negligence claim, but denied as to Plaintiff's
> false arrest/false imprisonment claim, his assault and battery claim, and his gross
> negligence claim. ECF No. 46.

(DE 66, p. 44.) Accordingly, the Court adopts the Report for the reasons stated below.

## BACKGROUND

The Report and Recommendation sets forth the relevant facts and legal standards, which

the Court incorporates without a complete recitation. In any event, the Court provides this

summary as a brief background relating to the objections raised by Delaney.

On March 11, 2021, McDowell was driving to work at about 6:30 a.m. when Delaney

began following McDowell on Highway 22 in Conway, South Carolina. (DE 1-1 p. 4, DE 46-1,

p. 6.) According to McDowell, at about 4:00 a.m., he was directed by his employer, Safeshield

---

[3]    The Court dismissed McDowell's claim for "Negligent Infliction of Emotional Distress – Outrage"
as well as his claims pursuant to 42 U.S.C. § 1983 and for punitive damages and attorney's fees against
SCDPS. (*See* DE 21).

Traffic Control Solutions ("Safeshield"), to respond to a call for a public roadway repair on Highway 22. (DE 52, p. 2, DE 52-1, p. 3, 101:13-21.) McDowell was instructed by Safeshield to "hurry up and get down there." (DE 52-1, p. 3, 100:16-18.) McDowell drove quickly with his flashers onto the intended location. (*Id.* p. 3, 100:18-19.) According to McDowell, when his automobile lights are on, he can speed at around 5-10 miles over the posted speed limit to respond to a work-related roadway emergency. (*Id.* p. 4, 115:3-22.)

When McDowell arrived at the scene, he intended to put up his first sign and noticed Delaney behind him. (*Id.* p. 3, 100: 19-22.) McDowell thought Delaney was behind him to greet him "like they always do" because they were working together. (*Id.* p. 3, 100: 23-25; 101:1.) Before arriving at the scene, Delaney was dispatched to a BOLO ("be on the lookout" call). According to Delaney and SCDPS, a concerned citizen called in a BOLO for a white construction vehicle with amber flashing lights on top. (*See* DE 44-1, p. 3, 19:1-5.) The concerned citizen reported that the truck ran a stop sign, was almost hit by a semi-truck, and continued traveling onto Highway 22. (*Id.* p. 3, 19:5-8.) Delaney saw a vehicle matching the description from the call and began to follow it. (*See* DE 46-4, p. 4, 19:12-20.) Delaney's incident report indicates that the white truck failed to maintain its lane and struck the fog line several times. (*See* DE 46-1, p. 6.) Delaney also observed the vehicle reaching a maximum speed of 83 mph. (DE 60-1, ¶ 6.)

According to McDowell, Delaney did not activate his blue lights when he exited his vehicle at the scene. (DE 52-1, p. 6, 126:2-3.) Upon exiting the vehicle, McDowell said Delaney was at the door of his cruiser and had a gun in his face. (*Id.* p. 6, 126:7-8; 129:13-22.) McDowell states that in response to asking Delaney what was going on, Delaney informed him that he was driving drunk and was under the influence and that "he had a call that someone told him [Plaintiff] was

3

drinking or something.". (*Id.* p. 6, 126:12-15.) McDowell also recalls Delaney telling him he ran

a stop sign on 410 at 701, but McDowell states he did not run the stop sign. (*Id.* p. 13, 215:14-17.)

McDowell recalls explaining to Delaney that he had taken his "normal medication" that

morning but nothing that would impair him. (*Id.* p. 13, 216:2-12.) During his deposition, Delaney

explained that he observed Plaintiff unable to maintain his lane by going over a fog line to the left

and going over the center line and that Plaintiff was "fluctuating speeds." (DE 44-1, p. 4. 20:5-

10.) Delaney did not recall the speed discrepancy he observed. (*Id.* p. 4, 20:11-14.) Nor did

Delaney observe the information provided to him in the BOLO. (DE 52-5, p. 4, 28:5-15.) Delaney

also observed that he believed Plaintiff to be lethargic, having slurred speech, and having dilated

eyes. (DE 44-1, p. 5, 36:4-8.) McDowell asserts that his speech is impeded by the fact that he

does not have teeth. (DE 66, p. 5.)

Delaney instructed McDowell to perform several field sobriety tests, including the pen test,

the heel/toe test, and the one-leg hop. (DE 52-1, p. 7, 131:5-6; 132:12-18.) According to

McDowell, he passed the field sobriety tests, but Delaney told him he still believed he was under

the influence and had probable cause to search his work truck. (DE 52-1, p. 8, 134:11-21.)

McDowell testified that Delaney searched his work truck without his consent. (*Id.* p. 8, 134:21-

25; 135:1-4.) Upon searching the truck, Delaney found several of McDowell's medications, as

well as his son's medication, and Prilosec. (*Id.* p. 8, 135:16-23.) McDowell said the Prilosec he

obtained from his stepfather was for his stomach. (*Id.* p. 8, 136:9-21.) Before searching the car,

Delaney placed McDowell in handcuffs, and upon completion of the search of the truck, Delaney

put McDowell in the front seat of his car and told him he would charge him. (*Id.* p. 8, 137:2-25.)

McDowell states Delaney did not read him his "rights." (*Id.* p. 8, 137:20.) According to Delaney,

when he administered the field sobriety tests to McDowell, he observed a "lack of smooth pursuit"

of McDowell's eyes during the horizontal gaze nystagmus test. (DE 44-1, pp. 6-7, 60:23-25; 61-23.) Delaney observed McDowell miss his heel-to-toe and move his arms to maintain balance during the walk-and-turn test. (*Id.* pp. 8-9, 66:25; 67:20.) Based on his observation, Delaney gave McDowell a ticket for driving under the influence in violation of S.C. Code Ann. § 56-05-2930(A). In addition to this charge, McDowell was eventually charged with possession with intent to distribute narcotics. (DE 1-1, pp. 5-6.)

McDowell was booked into the Horry County Detention Center on both a DUI charge and a drug charge and released the same day. (DE 46-5.) That same day, Delaney presented an affidavit for an arrest warrant for a drug manufacturing/possession charge with intent to distribute in violation of S.C. Code Ann. § 44-53-0370(b)(2) to Horry County Magistrate Judge Aaron Butler. (DE 46-1, p. 9.) Delaney's affidavit was based on his belief that he had found narcotics in Plaintiff's truck. (*Id.*) Magistrate Judge Butler found probable cause existed and issued the arrest warrant, which was served on Plaintiff on March 11, 2021. (*Id.*)

The next day, McDowell went to the Conway Patrol Office to meet with the head of the post. (DE 52-1, p. 12, 159:1-14.) McDowell also went to a medical facility on the day of his release to obtain a urine test, and the test results showed no controlled substances or narcotics in his urine. (DE 52-3.) While at the Conway Patrol Office, Plaintiff says that the head of that post watched the dash camera video and told him his charges were dismissed, that they were going to fire the officer, and they were sorry for what happened. (DE 52-1, p. 12, 160:19-25; 161:1-18.) In a letter dated May 12, 2021, Senior Assistant Solicitor Joshua D. Holford sent a letter to Defendant Delaney advising him that the charges against Plaintiff were dismissed. (DE 52-4.)

A SCDPS Report reveals that First Sergeant D.J. Utley ("Sgt. Utley") provided a memorandum to Captain G.M. Caulder, dated April 5, 2021. According to the memo, Sgt. Utley

discovered the call originated from a concerned citizen who reported that a "white work truck with a yellow flashing light disregarded a stop sign at the intersection of SC 410 and US 701 and was almost struck by a commercial vehicle." (DE 53-3, p. 3.) Notably, the notes from the computer aided dispatch ("CAD") report reveal that the caller never stated the driver of the white Chevy Silverado was speeding or that the driver appeared under the influence of anything. (*See* DE 46-3.)

Sgt. Utley also noted that the pills logged in as evidence related to this case were consistent with the color and imprint of a medication prescribed for indigestion (Omeprazole). (DE 52-3.) Sgt. Utley then met with Defendant Delaney on March 15, 2021. (*Id.* p. 4.) Sgt. Utley asked Delaney to perform standardized sobriety tests and Sgt. Utley determined that while Defendant Delaney could perform the tests properly, he could not tell Sgt. Utley "all of the clues on each test" and "the amount of clues" to look for corresponding to each test. (*Id.*) When they reviewed the dash camera video of McDowell's arrest together, Sgt. Utley noted that Delaney did not activate his in-car video on SC 22, thus, McDowell's alleged swerving was not captured on video. (*Id.*) The two men agreed after reviewing the video that Plaintiff "only had one clue on the walk and turn and one clue on the one leg stand." (*Id.*) According to Sgt. Utley, Delaney still believed that Plaintiff was under the influence of something even though the tests he performed did not indicate any impairment. (*Id..*) At this meeting, Delaney also admitted that he typed in the wrong imprint number located on the pills and, therefore, mistakenly believed McDowell had a Schedule III narcotic. (*Id.*) Sgt. Utley included within his memo that Delaney violated policy by throwing the pill bottle containing the pills in the trash and violated policy by checking the tightness of Plaintiff's handcuffs. (*Id.*) Sgt. Utley and Delaney also reviewed the video recording from J. Reuben Long. After watching the video, Sgt. Utley asked Delaney why he did not use the video

6

recording to capture Plaintiff's refusal to take the tests; Delaney responded, "I don't know." (*Id.*)

Sgt. Utley also reviewed the narrative from the arrest and discovered that Delaney was untruthful

about the clues observed during the field sobriety tests. (*Id.*) On April 3, 2021, Delaney submitted

a resignation letter to SCDPS indicating he was seeking other law enforcement opportunities. (DE

46-6.) The charges against McDowell were dismissed in May 2021. (DE 46-7.)

## DISCUSSION

Delaney objects to the Report raising six errors: (1) the Report erred in finding an issue of

fact as to whether McDowell's arrest was supported by probable cause, (2) Delaney has immunity

for malicious prosecution under S.C. Code Ann. § 15-78-60(23), (3) McDowell did not allege

alternative theories of liability on his state-law claims, 4) actual malice, in this case, is not a

question for the jury, 5) McDowell has not presented evidence to create a fact dispute for malice

by Delaney, and 6) the Report improperly considered evidence produced during discovery that

was not alleged in the complaint to create a fact dispute on McDowell's Assault and Battery claim.[4]

(*See* DE 67.) However, to be actionable, objections to the Report and Recommendation must be

specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial

---

[4]    As for Delaney's assault and battery objection (objection #6), Delaney contends the Magistrate
Judge erred by considering allegations not contained in his Complaint and that this Court "cannot consider
claims raised for the first time in a response to" a dispositive motion, citing *Doe 9 v. Varsity Brands, LLC*,
679 F. Supp. 3d 464, 480 (D.S.C. 2023). *See also Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068
(D. Md. 1991) ("[T]he complaint may not be amended by the briefs in opposition to a motion to dismiss").
McDowell was not required to allege all facts supporting his claim at the pleadings stage. *See* Rule 8, Fed.
R. Civ. P. ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim
showing that the pleader is entitled to relief . . . .") That said, under Rule 56, the movant bears the initial
burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the
burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See
Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). McDowell has done that here alleging that his
assault and battery claims are based on his testimony (1) that Defendant Delaney kept trying to "force
different tests upon him, including a knuckle test with the handcuffs;" (2) that he was "drug" into jail and
he was "hit" by Defendant Delaney while in the breathalyzer room; and (3) that three or four officers,
including Delaney, hit him and kicked him while in custody. (DE 52, p. 23, DE 53-1, p. 9.) Accordingly,
Delaney's assault and battery objection is overruled.

review, including appellate review, if the recommendation is accepted by the district judge. *See United States v. Schronce*, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). "The Supreme Court has expressly upheld the validity of such a waiver rule, explaining that 'the filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal— *that are at the heart of the parties' dispute.*'" *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (2005) (citing *Thomas v. Arn*, 474 U.S. 140, 147 (1985) (emphasis added)). In the absence of *specific* objections to the Report and Recommendation of the magistrate judge, this Court is not required to give any explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

### 1. Probable Cause

First, turning to Delaney's probable cause objection, Delaney contends the Report incorrectly found that "the evidence suggests there is a genuine dispute as to whether [] Delaney actually observed circumstances that would cause him to reasonably believe he had probable cause to arrest Plaintiff." (DE 67, p. 2(citing DE 66, p. 20).) Delaney asks this Court to focus its inquiry on what he knew or believed to support his probable cause determination and not whether McDowell was driving under the influence, speeding, or failing to maintain his lane. (DE 67, pp. 2–3.) Delaney's request is incomplete.

"[P]robable cause to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." *Harris v. Town of S. Pines*, 110 F.4th 633, 639 (4th Cir. Aug. 5, 2024). When a dispute about probable cause exists, a court must consider the "facts and circumstances" constituting "the events leading up to the arrest . . . ." *Id.*

Importantly, the Court cannot make credibility determinations at summary judgment. *Ray v. Roane*, 93 F.4th 651, 655 (4th Cir. 2024). Instead, the Court must construe the facts in the light most favorable to McDowell—the non-movant—to determine what exculpatory facts Delaney knew when he arrested him. *See Anderson v. Liberty Lobby, Inc.*, 477. When such a dispute arises on a motion for summary judgment, "the question is . . . *whether there is a genuine dispute of material fact about what the officers knew or reasonably believed at the time that could support a finding of probable cause.*" *Id*. (emphasis added); *see Ouza v. City of Dearborn Heights, Michigan*, 969 F.3d 265, 279 (6th Cir. 2020) ("In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible."). U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").

Since the Report ably shows there are disputed material facts about what Delaney knew or reasonably believed, summary judgment is inappropriate. Fundamentally, there is a genuine dispute regarding the facts surrounding McDowell's purportedly impaired condition. As an initial matter, however, McDowell's testimony that Delaney said he passed the field sobriety tests ("FSTs") (DE 52-1, p. 7, at 131:5–132:11) need not be accepted because it is contradicted by Delaney's dash camera footage. (DE 44-3[5] at 13:09–15.) Thus, the Court cannot adopt these statements as true. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

---

[5]    This citation refers to the dash camera footage provided in support of Delaney's motion for summary judgment. (DE 44-3, p. 1 (noting "Brendan Delaney's Dash Camera Footage will be provided to the Court via email").)

On the other hand, however, Delaney contends that during the stop, he observed McDowell's "letharg[y], . . . slurred speech, and . . . dilated eyes" as well as McDowell's poor balance during the FSTs. (DE 44-1, p. 5 at 36:4–8; *id.*, p. 8 at 66:14–16.) The inference Delaney drew was that McDowell was impaired. (*See* DE 44-3 at 12:29–43.) However, McDowell proffered undisputed testimony regarding his health conditions that would permit another (and equally reasonable) inference: that Delaney's observations were the result of McDowell's poor health, rather than intoxication. As the dash camera footage confirms, McDowell told Delaney he had a bad leg and did so *before* Delaney performed the FSTs, which required the use of McDowell's bad leg. (DE 44-3 at 8:32–44 (explaining to Delaney that McDowell had surgery on one leg and the other was weak and he would probably fail the tests); *cf.* DE 52-1, pp. 7–8 at 132:12–133:4 (explaining McDowell's condition).) Under the circumstances, including McDowell's willingness to perform the FSTs in the first place, a reasonable officer could readily infer from McDowell's early-morning performance that he was unimpaired, but his poor physical health limited his ability to complete the tests.[6] *See Bhattacharya v. Murray*, 93 F.4th 675, 686 (4th Cir. 2024) (noting that "a court must view all facts, and reasonable inferences taken therefrom, in the light most favorable to the nonmoving party"). Such was McDowell's statement to Delaney *prior to* the tests' administration.

The Court did not overlook Delaney's other argued bases for probable cause. However, Delaney's objection here largely does not consider the disputes of fact, but rather focuses on the

---

[6]    What's more, McDowell apparently testified that he has no teeth "since 2011" which makes speaking difficult, though the cited-to deposition testimony is absent from McDowell's filings. (*See, e.g.*, DE 52, p. 12 n.6; DE 53, p. 23 n.11.). McDowell also proffered testimony regarding other health problems, some of which require McDowell to waken early in the morning. (DE 52-1, p. 3 at 100:7–12.)

probable cause for Delaney's stop. Delaney cites, among other cases,[7] *United States v. Dorsey*, 744 F. App'x 130, 132 (4th Cir. 2018) (per curiam). In *Dorsey*, for example, while the Fourth Circuit Court of Appeals confirmed that the officer had probable cause to believe a traffic violation occurred under South Carolina law after seeing the plaintiff "repeated swerving out of his traffic lane," the Court noted the same evidence provided only *reasonable suspicion* of intoxication. *Id.* at 132. While there is indeed evidence supporting McDowell's commission of failing to maintain lane prior to Delaney stopping McDowell (*see* DE 44-3 at 12:35–43), McDowell is here challenging his *arrest*, not his stop. "'[R]easonable suspicion' is a less demanding standard than probable cause . . . ." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). And a custodial arrest requires *probable cause. See, e.g.*, *Hupp v. Cook*, 931 F.3d 307, 318 (4th Cir. 2019). *Dorsey* thus does not provide much help when the facts justifying McDowell's custodial arrest are in dispute.

In addition, as the Magistrate Judge noted, there is conflicting evidence on the issue of whether McDowell was speeding in the first instance. The posted speed limit on the highway where Delaney observed McDowell driving was 65 miles per hour. (DE 60-1, p. 2.) Delaney contends that after pacing McDowell's vehicle, McDowell was driving at 83 miles per hour.[8] (DE 60-1, p. 2.) McDowell offers several general denials. (*See, e.g.*, DE 52-1, p. 6 at 126:18–19 ("I didn't do nothing wrong.").) Though such general denials are insufficient on their own, McDowell also states that he was driving "over 60 at one time" and elsewhere states that he never drove more than "maybe 5 over or 10 over" when driving his work truck. (*See id.* p. 4 at 115:1–22.) As the

---

[7]    Some of Delaney's cases are distinguishable on their facts. *State v. Parker*, for instance, is distinguishable on the basis that an anonymous caller *stated* that the appellant in that case "was driving an automobile *while intoxicated* . . . ." 271 S.C. 159, 161, 245 S.E. 2d 904, 905 (1978) (emphasis added). In addition, of course, *Parker* did not deal with summary judgment in federal court.

[8]    In his deposition testimony, Delaney testified that he observed McDowell's "fluctuating speed," but he did not say McDowell was "speeding." (DE 52-5, p. 3, 20:7-18.) Delaney also testified that speed fluctuation was not a "moving violation." (*Id.*)

Magistrate Judge correctly noted, when taken together, McDowell's statements amount to a dispute as to whether McDowell was speeding. This dispute is material because speeding creates independent probable cause to conduct a stop as well as (in some cases) an arrest under South Carolina law. *See* S.C. Code Ann. §§ 56-5-1520, 56-7-15. Finally, Delaney's suggestion that McDowell's admission to taking Tramadol (DE 44-5[9] at 9:41–55; DE 67, p. 4), justified the arrest is without merit because this admission occurred *after* Delaney's arrest. (*See* DE 44-1, p. 6 at 60:7–11.)

Since there is a genuine dispute of material fact about what Delaney knew or reasonably believed at the time that could support a finding of probable cause, summary judgment must be denied on this claim.

### 2. Malicious Prosecution

Delaney contends the Report misconstrues its argument for immunity on McDowell's malicious prosecution claim. Delaney argues a government employee is immune from liability for malicious prosecution claims under the South Carolina Tort Claims Act ("SCTCA"). *See* S.C. Code Ann. § 15-78-60(23) ("The governmental entity is not liable for a loss resulting from . . . (23) institution or prosecution of any judicial or administrative proceeding . . . ."). That said, the Report ably addresses this claim. To begin with, the Report correctly states that, to the extent an individual is sued in their individual capacity (such as in this case), government employees are immune from suit under the SCTCA unless they (1) acted outside the scope of employment; or (2) committed actual fraud or acted with actual malice, intent to harm, or committed a crime involving moral turpitude. *See DeCecco v. Univ. of S.C.*, 918 F. Supp. 2d 471, 521 (D.S.C. Jan. 16, 2013).

---

[9]    This refers to the Horry County booking room footage provided in support of Delaney's motion for summary judgment. (DE 44-5, p. 1 (noting "Horry County Detention Center Camera Footage will be provided to the Court via email").)

McDowell has alleged that Delaney was acting within the scope of his employment and that he acted with actual malice and the intent to harm. In the summary judgment context, "[t]he text of the relevant SCTCA exception is disjunctive: [t]he state is immune either if the employee acted outside the scope of his duties *or* if his conduct constitutes actual fraud, actual malice, intent to harm, or moral turpitude." *Newkirk v. Enzor*, 240 F. Supp. 3d 426, 436 (D.S.C. 2017) (emphasis in original).

The term "actual malice" is not defined under the SCTCA. South Carolina defines "malice" as it is used in the tort of malicious prosecution as "the deliberate, intentional doing of a wrongful act without just cause or excuse." *Fields v. Richland Cnty. Sheriff's Dep't*, No. 3:17-cv-0443-MGL-TER, 2018 WL 4560538, at *5 (D.S.C. May 25, 2018), report and recommendation adopted, No. 3:17-cv-0443-MGL-TER, 2018 WL 4001830 (D.S.C. Aug. 22, 2018). McDowell argues Delaney acted with malice and has taken that position throughout the litigation from the lawsuit's inception. *See Smith v. Ozmint*, 394 F. Supp. 2d 787, 792 (D.S.C. 2005) (explaining that a state employee can be held personally liable for some intentional torts committed within the scope of his employment).

There is evidence that Delaney intentionally turned off video recording equipment during a critical moment in the investigation. (DE 52-3, p. 4) ("When asked why he did not utilize the recording equipment to capture the refusal [] Delaney responded, 'I don't know.'"). Additionally, Delaney intentionally failed to turn on his in-car dash camera to capture critical driving pattern evidence. (*Id.*) ("[Delaney] failed to activate his in-car video on SC 22 so the evidence of the violator swerving was not captured."). Delaney also admitted that McDowell presented only one clue per field sobriety exercise, and accordingly, no indicators of impairment were present. (*Id.*) ("We agreed after watching the sobriety test that [] McDowell only had one clue on the Walk and

13

Turn and one clue on the One Leg Stand. [] Delaney still believed that [] McDowell was under the influence even though the tests he performed did not indicate any impairment."). These facts and circumstances, among others, noted in the Report, present sufficient evidence from which a jury could infer malice.[10]

### 3. Malice

Delaney's final objection considers whether actual malice is a question for the jury (objection #4). Delaney contends McDowell has the burden of proof to show Delaney acted with actual malice and that "[t]he Act states that Delaney is immune from torts committed in the scope of his employment until it is proven that he acted with actual malice. In other words, it is not Delaney's burden of establishing an exception to the waiver of immunity because, unlike the State, he has not waived that immunity." (DE 67, p. 12.) To begin with, "[t]he governmental entity claiming an exception to the waiver of immunity under the Tort Claims Act has the burden of establishing any limitation on liability." *Faile v. S.C. Dep't of Juv. Just.*, 350 S.C. 315, 324, 566 S.E.2d 536, 540 (2002). While the South Carolina legislature intended to limit the liability of governmental entities under SCTCA, the legislature did not intend to extend similar immunity to individual employees who commit intentional torts outside the scope of their employment. *See* S.C. Code Ann. § 15-78-70(b). ("Nothing in this chapter may be construed to give an employee of a governmental entity immunity from suit and liability if it is proved that the employee's conduct

---

[10]    As for Delaney's alternative theories of liability on his state law claims objection (objection #3) and whether McDowell has presented evidence to create a fact dispute for malice (objection #5), Delaney contends there are no issues for a trier of fact to determine because "the Plaintiff's allegations in support of each of his state tort claims are directed at the collective 'Defendants' [and] . . . At no point does he allege that Delaney acted outside the scope of his employment, with malice, or intent to harm such that he could reasonably have been said to pled alternative theories of liability." (DE 67, p. 10.) However, given the Court's ruling on malice and the fact that McDowell has defined Defendants to include Delaney and SCDPS, this objection is overruled.

14

was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude."). "Additionally, the issue of common law actual malice is a question for the jury." *Murray v. Holnam, Inc.*, 344 S.C. 129, 145, 542 S.E.2d 743, 751 (Ct. App. 2001). McDowell is the non-movant and must only survive summary judgment and not prevail on merits. The Report has ably and comprehensively identified genuine issues of material fact in dispute, and so Delaney's SCTCA immunity defense is inappropriate for disposition on a Rule 56 motion.

Accordingly, after a thorough review of the Report and Recommendation and the record, the Court overrules Delaney's objections (DE 67),[11] adopts the Report (DE 66), and incorporates it here.

It is, therefore, **ORDERED** that Delaney's Motion for Summary Judgment is granted as to McDowell's negligence, abuse of process and negligent infliction of emotional distress claims, as well as any claim brought under the Eighth Amendment, but denied as to McDowell's Fourth Amendment claim brought under § 1983, as well as Plaintiff's state-law claims for false arrest/false imprisonment, malicious prosecution, and assault and battery. (DE 44.)

It is further **ORDERED** that SCDPS's Motion for Summary Judgment is granted as to Plaintiff's malicious prosecution claim, abuse of process claim, and any simple negligence claim, but denied as to Plaintiff's false arrest/false imprisonment claim, his assault and battery claim, and his gross negligence claim. (DE 46.)

---

[11]   Because this Court overrules Delaney's (DE 67) objections, the Court finds as moot McDowell's Motion to Strike Delaney's Objections (DE 71).

**AND IT IS SO ORDERED**.

_____
Joseph Dawson, III
United States District Judge

Florence, South Carolina
September 4, 2024

## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified that they have the right to appeal this order within thirty

(30) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate

Procedure.